# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**STACIE MACDONALD,** *et al.*,

    Plaintiffs

v.                                      **CIVIL NO. JKB-17-1747**

**COSTCO WHOLESALE CORP.,**

    **Defendant.**

## MEMORANDUM

Plaintiffs Stacie and Andrew MacDonald, citizens and residents of Maryland, brought this suit against Defendant Costco Wholesale Corp. on June 12, 2017 in the Circuit Court for Anne Arundel County, Maryland. (*See* Notice of Removal, ECF No. 1.) Defendant, a citizen of the State of Washington, removed the case to this Court on the basis of diversity of citizenship on June 26, 2017. (*Id.*) Defendant answered on the same day. (ECF No. 5.) Defendant now brings a motion for summary judgment. (ECF No. 26.) Plaintiffs have responded in opposition (ECF No. 27) and Defendant has replied (ECF No. 28). The motion is therefore fully briefed and ripe for review. No hearing is necessary to resolve the matter. Local Rule 105.6 (D. Md. 2016). For the reasons stated below Defendant's motion will be granted in part and denied in part by accompanying order.

I. *Background*[1]

In May 2015 Stacie MacDonald and her husband, Andrew, went to Costco in Glen Burnie Maryland to shop for groceries. (Dep. Stacie MacDonald 63:8-15, ECF No. 27-3.) The couple shopped separately, and Stacie "went toward the food area." (*Id.* 66:6.) She had not had lunch. (Trial Tr. 88:3, ECF No. 26-3.) She took a package of Super Veggie Cakes from the shelf, and began to eat them while she continued shopping. (Dep. Stacie 68-69.)

Unbeknownst to Stacie, she was being watched. Mr. Sears, a Costco employee who worked as a floor manager and in loss prevention, had seen Stacie take the Veggie Cakes and begin eating them. (Trial Tr. 9-11.) He began to follow her. (*Id.* at 11:17-18.) Each package of Veggie Cakes contains two six-packs of cakes. (*Id.* at 10:5-6.) Mr. Sears watched Stacie consume some or all of one six-pack and dispose of it in the garbage. (*Id.* at 11:11-12:22; Dep. Stacie MacDonald at 69:13-70:2.) At some point, Mr. Sears watched her pick up a second package of Veggie Cakes. (Trial Tr. at 12:13-15; Dep. Stacie MacDonald at 72:1-4.) After watching her meet briefly with her husband, he saw her toss the second six-pack from the first package and the outer box from the first package in a garbage can, "[r]ight in front of her husband." (Trial Tr. at 14:14-16; *see* Dep. Stacie MacDonald at 69:19-70:2.) Mr. Sears later saw both Stacie and Andrew proceed to the registers. (Trial Tr. at 15:11-12.)

The MacDonalds contend that they were executing a detailed plain in relation to the food items at the center of this case. According to Stacie, she had badly damaged the exterior package of the first Veggie Cake package when she opened it, rendering the UPC bar code useless. (*See* Stacie MacDonald Aff. ¶ 3, ECF No. 27-7.) Instead of bringing the unscannable package to the register, Stacie thought to get another package from the shelf. This way, as Stacie saw it, the

---

[1] Because the facts recited here are relevant to a motion for summary judgment, they, and the inferences to be drawn from them, are taken in the light most favorable to Plaintiffs, who are the parties opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

cashier would not "have to call someone and get the price" and could simply ring up the second package and set it aside. (Trial Tr. at 90:8-10.) It was, Stacie thought, "the right thing to do." (*Id.*). This plan grew in complexity when Stacie had to use the restroom prior to checking out, forcing her to rely on Andrew to inform the cashier. (*Id.* at 91:1-12.) Stacie left Andrew in line, and he swears that he "told the cashier to charge the veggie cakes and put the package aside and not in my cart." (Andrew MacDonald Aff. ¶ 3, ECF No. 27-8.) It is unclear if the plan was successfully executed. Andrew "believe[s]" that the Veggie Cakes were indeed set aside, and were not in *his* shopping cart as he left the store – Stacie and Andrew had been shopping separately, and (according to them) had separate carts. (*Id.* ¶ 4.) Stacie is more certain about her cart, swearing "[t]he veggie cakes were not in my shopping cart when I exited the store." (Stacie MacDonald Aff. ¶ 7; *see also* Dep. Stacie MacDonald at 84:5-8.) Mr. Sears later claimed that the Veggie Cakes were in Stacie's cart after the MacDonalds went through the register. (Trial Tr. at 31:15-18.) The MacDonalds' receipt shows that they paid for a package of Veggie Cakes, but without knowing whether the second package ended up with the MacDonalds after they had checked out, this evidence could support either the Plaintiffs' version of events or the Defendant's. (*See* Receipt, ECF No. 27-6.)

Regardless, Mr. Sears was unaware of Stacie's plan to reimburse Costco for the Veggie Cakes. He had seen a woman consume food, throw the package in the garbage, and walk towards the exit without paying for it. He approached her and asked her to come back to the office. (Trial Tr. at 22:13-14.)

From here, the important events are in complete dispute. Mr. Sears testified, at the later criminal trial, that he asked Stacie about the Veggie Cakes and gave her an opportunity to explain. (Trial Tr. at 33:3-11.) He testified that instead of explaining her plan to pay for the

3

Veggie Cakes, she became agitated and indignant, saying that it was "beneath her for us to stop her for something so miniscule." (*Id.* at 33:12-14.) He testified that he checked her receipt against the contents of her shopping cart, and found the second package of Veggie Cakes. (*Id.* at 31:15-18.) There was no evidence of payment for the first package, only for the second. Or, there was evidence of payment for the first package that was consumed, but then not for the second in Stacie's possession. In any event, in Sears' view, the MacDonalds had taken two packages of Veggie Cakes but only paid for one. He testified that he then called the police. (*See id.* at 24:18.)

Stacie, according to her testimony at the criminal trial, her deposition, and in a sworn affidavit, remembers things differently. According to Stacie, once she was in the office she tried to explain that she had (at least as far as she knew) paid for the Veggie Cakes she had consumed, but was never given an opportunity to explain, and was in fact told not to speak by another Costco employee. (Trial Tr. at 98:8-9 ("I tried to say, look, can we talk about this"); *id.* at 97:19-20 ("I asked her if I could explain . . . ."); *id.* at 98:2-3 ("[Mr. Sears] came back at some point, but he would not let me talk."); *id.* at 99:21-100:2 (Costco employee told her not to speak).)

According to Stacie, Mr. Sears was the agitated figure during this encounter, becoming irate at her and her husband. (*See* Trial Tr. at 98:7-8.) She testified at trial that Mr. Sears "was very angry." (*Id.*) She testified that at the time she told her husband that Mr. Sears "seemed crazy," and was "all fired up" and "out of control." (*Id.* at 101:15-18; *see also id.* at 110:13-111:1.) She testified in her deposition that he was "acting like a lunatic." (Dep. Stacie MacDonald at 92:8-9.) Andrew testified that while he was waiting outside the office, Mr. Sears "blasted out of the office," and Andrew attempted to take a picture of him. (Trial Tr. at 134-35.) Andrew testified that this made Mr. Sears particularly upset. Andrew testified that after he took

4

a photo of Mr. Sears, Mr. Sears "was very irate, raised his voice, [and] screamed." (*Id.* at 136:1-2; *see also* Dep. Andrew MacDonald at 41:22-42:12.) Mr. Sears testified that he was simply uncomfortable about having his photograph taken, and politely asked that Andrew delete it. (Trial Tr. at 39:3-8.) However, Mr. Sears also testified that it was after this incident with the photograph that he called 9-1-1 hoping that the police would "hurry up and respond." (*Id.* at 41:6-10.) Furthermore, a fellow Costco employee testified that Mr. Sears was upset about Andrew taking a photo. (*Id.* at 71:10-12.)

According to Stacie, and Andrew, Mr. Sears never checked their receipt against the items in their cart until after the police had arrived and "paraded" Stacie through the store in handcuffs. (Trial Tr. at 100:5 ("paraded"); *see also* Trial Tr. at 173:8-12 (Judge at bench trial noting that, after hearing testimony from Mr. Sears, Stacie, and Andrew, "We don't know when [Mr. Sears] inventoried.")). In other words, according to Stacie, Mr. Sears never asked for an explanation, did not allow Stacie to give one, and did not even investigate the contents of her shopping cart to see if she had actually stolen anything before calling the police.

It is undisputed that the police did arrive, and that they ultimately arrested Stacie. After a criminal bench trial the following year she was found not guilty of theft. The judge did "not believe that anybody in the store acted improperly," but noted that the question of whether the store acted properly was not "what we're here about." (Trial Tr. at 173:16-19.) The judge determined that based on Stacie and Andrew's testimony, there was a reasonable doubt as to whether Stacie intended to steal anything that day. (*See id.* at 173-74.) According to Stacie, she spent roughly $2,000 defending the criminal case, and suffered various other harms as a result of this incident, such as stomach aches, PTSD, loss of sleep, and a residual fear of entering stores. (Dep. Stacie MacDonald at 121-24.) According to Andrew, he suffered as well, having to take

5

over some of Stacie's work duties as she recuperated. (Dep. Andrew MacDonald 11:17-12:1, ECF No. 27-4.) Their love life, it seems, suffered as well. (*See* Compl. ¶¶ 45-46.)

Together, the MacDonalds brought this action against Costco in Maryland state court on June 12, 2017, and Costco removed the action to this Court on the basis of diversity jurisdiction on June 26, 2017. (*See* Notice of Removal.) The MacDonalds' complaint asserts six counts against Costco: malicious prosecution, false imprisonment, assault, battery, negligence, and loss of consortium. (*See* Compl. ¶¶ 18-46.) Costco moved for summary judgment on all counts on January 19, 2018, a motion which has now been fully briefed. It is this motion that the Court considers now.

## II. *Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by

affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### III. *Analysis*

Defendant advances the following arguments in support of its motion for summary judgment: that it cannot be held liable for malicious prosecution or false imprisonment because it is protected by the "shopkeeper's privilege," and that Plaintiffs have no evidence to support claims of malicious prosecution, assault, battery, negligence, or loss of consortium.

#### a. *Shopkeeper's Privilege*

Defendant asserts that it cannot be held liable for false imprisonment or malicious prosecution because it is entitled to the "shopkeeper's privilege." In Maryland:

> A merchant or an agent or employee of the merchant who detains or causes the arrest of any person shall not be held civilly liable for . . . malicious prosecution [or] false imprisonment . . . if in detaining or in causing the arrest of the person, the . . . employee . . . had, at the time of the detention or arrest, probable cause to believe that the person committed the crime of 'theft,' as prohibited by § 7-104 of the Criminal Law Article, of property of the merchant from the premises of the merchant.

Md. Code Ann., Cts. & Jud. Proc. § 5-402(a). "Theft" here is, essentially, the knowing or willful taking of the property of another with the intention to deprive the owner of the property. *See* Md. Code Ann., Crim. Law § 7-104. "Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." *Banks v. Montgomery Ward & Co.*, 128 A.2d 600, 604 (Md. 1957). Whether the merchant had probable cause is a question properly resolved by the Court upon summary judgment only when the facts necessary to determine its existence are

7

undisputed. *See Silvera v. Home Depot U.S.A., Inc.*, 189 F. Supp. 2d 304, 310 (D. Md. 2002) (citing *Gladding Chevrolet, Inc. v. Fowler*, 287 A.2d 280, 284 (Md. 1972)).

Probable cause is "determined by the facts known at the time the prosecution was instituted," *Silvera*, 189 F. Supp. 2d at 310 (citing *Banks*, 128 A.2d at 604-605), but "[a] failure to investigate may destroy probable cause," *Shipp v. Autoville Ltd.*, 328 A.2d 349, 362 (Md. Ct. Spec. App. 1974). If the "circumstances are such that a reasonable man would have pursued [further investigation]," then "a failure by a private prosecutor to pursue a course of further investigation may bear heavily upon the question of whether probable cause exists." *Montgomery Ward & Co., Inc. v. Keulemans*, 326 A.2d 45, 54 (Md. Ct. Spec. App. 1974). "In determining whether an investigation should be made, the following factors are important; the necessity of prompt action to prevent escape; the availability of information other than that in the possession of the accuser; the existence of a ready opportunity to obtain an explanation from the person accused or to ascertain his reputation; the character of the source from which the accuser's information comes." *Id.* (quoting Restatement (first) of Torts § 662 (Am. Law Inst. 1938)).

*Keulemans* helps demonstrate how investigation (or lack thereof) can affect probable cause. In that case, a security officer at a department store thought he saw an employee take a pair of clip-on sunglasses off the rack and place them in his pocket. 326 A.2d at 51. The security officer detained the employee after accusing him of trying to steal the glasses, but the employee immediately explained that the pair he had seemed to take were actually a pair he had legally purchased at a different store (he was simply comparing his pair with those in the department store). *Id.* at 52. The security officer did not follow up on this explanation, even though it was apparently fairly easily corroborated. *See id.* at 52-53. The Maryland Court of

8

Special Appeals determined that the question of whether the security officer had probable cause was one for the jury. *Id.* at 56. This was not because there was much doubt about whether the security officer had probable cause to initially suspect the employee of theft. Rather, the court determined there was a question of whether the security officer should have followed up on the employee's proffered excuse. *Id.*

Here, the facts known to Mr. Sears at the time he detained Stacie indicate he had probable cause, but Mr. Sears' probable cause may have been "destroyed" by a subsequent failure to investigate. Drawing all inferences in the Plaintiffs' favor, a jury could conclude that there were a number of factors that should have prompted further investigation. First, there did not appear to be a "necessity of prompt action to prevent escape." *Keulemans*, 326 A.2d at 54 (quoting Restatement (first) of Torts § 662 (Am. Law Inst. 1938)). Second, according to the MacDonalds, there was exculpatory information readily available to Mr. Sears, i.e. Stacie and Andrew's own explanations of events, as well as whatever the cashier had to say and the actual contents of the MacDonalds' shopping bags. Third, according to Stacie there was a "ready opportunity to obtain an explanation from the person accused," i.e. Mr. Sears could have simply asked her. *See id.* These are some facts that a jury *could* find and, based on these and perhaps other facts, the jury could additionally find that Mr. Sears should have investigated further. Furthermore, it is disputed whether Mr. Sears *did* investigate further. Thus, as in *Keulemans*, a jury could find that Plaintiffs were detained because of a mix-up that could have been easily cleared up had the merchant's agent acted reasonably. Thus, as in *Keulemans*, the question of probable cause is one for the jury.

Defendant attempts to distinguish *Keulemans*, but it misreads that case as well as the evidence here. First, the Defendant misreads *Keulemans* in arguing that it only applies to the

9

adequacy of an investigation performed by a prosecutor or policeman. (*See* Reply 7-8, ECF No. 28 (citing *Keulemans*, 326 A.2d at 54-55).) To be sure, the *Keulemans* court quoted the Restatement (first) of Torts, which used the term "prosecutor," and quoted an Iowa Supreme Court case that used the term "investigating policeman." *See* 326 A.2d at 54 (quoting Restatement (first) of Torts (1938)); *id.* at 55 (quoting *Knapp v. Chicago, B. & Q. R. Co.*, 85 N.W. 769 (Iowa 1901)). But *Keulemans* itself was about whether a store security officer had probable cause, even if the court referred to that security officer as a "private prosecutor." *See id.* at 53. And it has not been confined in its application to the actions of public prosecutors and policemen. *See K-Mart Corp. v. Salmon*, 547 A.2d 1069, 1073-74 (Md. Ct. Spec. App. 1998), *overruled on other grounds*, *Montgomery Ward v. Wilson*, 664 A.2d 916 (Md. 1995); *Kimbrough v. Giant Food Inc.*, 339 A.2d 688, 696 (Md. Ct. Spec. App. 1975); *Shipp*, 328 A.2d at 361-62.

Defendant also misreads the evidence presented thus far, and its impact. Defendant incorrectly asserts that it is undisputed that the Veggie Cake package was in the Plaintiffs' possession when they tried to leave the store, thus meaning that it is undisputed that Stacie stole the Veggie Cake. But Plaintiffs do dispute this fact; they deny that either possessed the second package after check-out.[2] And, even if it were undisputed that the Veggie Cake package was in Stacie's shopping cart as she was leaving the store, there would still be facts in dispute that go to probable cause . . . such as, for example, whether Mr. Sears asked for any explanation, permitted Stacie to provide one, or performed any follow up investigation. The jury could find, for example, that the Veggie Cakes *were* in Stacie's cart as she left the store, but that Andrew *had* told the cashier to set them aside and the cashier had erred, that Mr. Sears never asked Stacie for an explanation, and that if he had he would have understood the mix up, spoken with the cashier,

---

[2] They dispute this fact with different degrees of force. Andrew "believes" the package was not in his cart; Stacie swears that it was not in hers. (*See* Andrew MacDonald Aff. ¶ 4; Stacie MacDonald Aff. ¶ 7.)

10

and all would have been set right. If a jury found this scenario to be true, it could further find that a reasonable man in Mr. Sears' position *would* have asked Stacie for an explanation, and that in failing to do so he "destroyed" whatever probable cause he had developed from his direct observations of Stacie.

This case is unlike *Keulemans* in one important, but not dispositive, facet: in *Keulemans* the accused immediately offered his innocent explanation upon being accused of theft. *See* 326 A.2d at 52. It is undisputed that Stacie never told Mr. Sears her side of things on the date of the incident. A jury may find this fact troubling. They may conclude, as the Defendant asserts throughout its briefing, that Stacie's innocent explanation was really a "made for trial defense," that she concocted after the fact to escape criminal liability. (*See, e.g.*, Mot. Summ. J. Mem. Supp. at 8.) They may, however, believe Stacie, who has maintained that she did not, in fact, intend to steal anything, and was never given an opportunity to explain herself. They may additionally conclude that Mr. Sears' refusal to seek out any alternate explanation, permit Stacie to provide one, or do really any further investigation, was so unreasonable as to "destroy" whatever probable cause he may have had from watching Stacie's actions that day. All of which is to say that, though the Court makes no judgement as to whether Plaintiffs' case is fabricated, it is in fact "made for trial," and not, as the Defendant had hoped, for summary judgment. Plaintiffs' version may strike the Court as doubtful, but it is not so "over the top" that no reasonable juror could find in the MacDonalds' favor. This is now a credibility fight – uniquely the ken of juries. *See Williams v. Collier*, 357 F. App'x 532, 534 (4th Cir. 2009) (unpublished opinion).

### b. *Malicious Prosecution*

The tort of malicious prosecution in Maryland has four elements. *See S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 637 (Md. 2003).

> To establish a prima facie case of malicious prosecution, a plaintiff must show that 1) the defendant(s) instituted a criminal proceeding against the plaintiff; 2) the criminal proceeding was resolved in favor of the plaintiff; 3) the defendant(s) instituted the criminal proceeding without probable cause; and 4) the defendant(s) acted with malice or for the primary purpose other than bringing the plaintiff to justice.

*Id.* Defendant argues that it is entitled to summary judgment on Stacie's malicious prosecution claim because the evidence does not support the third or fourth element, i.e. that Defendant lacked probable cause or acted with malice. (*See* Mot. Summ. J. Mem. Supp. 20-26, ECF No. 26-1.)

As established above, there are facts in dispute from which a reasonable jury could conclude that Mr. Sears did not have probable cause to believe that Stacie had committed theft before he called the police and accused her of doing so. The Court need not restate the reasons that a jury could so find, but it will briefly note one additional issue. The State of Maryland charged Stacie with theft *and*, according to Plaintiffs' complaint, unlawful possession of a controlled substance. (Compl. ¶ 15.) Plaintiffs allege in their complaint that "*As a result of Defendant's agents* [sic] *false statements to the police*, Plaintiff Stacie MacDonald was . . . charged with theft *and unlawful possession of controlled substances.*" (*Id.* (emphasis added).) The "charges for unlawful possession of a controlled substance were '*nol prosse*' by the State's Attorney for Anne Arundel County." (*Id.* ¶ 16.) It appears that Plaintiffs envision their malicious prosecution claim as encompassing the prosecution of both the theft charge and the unlawful possession charges. (*See id.* ¶ 19.) The parties have not discussed the unlawful possession charges in their briefing on this motion: the Defendant makes no argument regarding,

for example, whether or not Mr. Sears had probable cause to believe Stacie possessed contraband; Plaintiffs make no mention of this possible alternative basis for a malicious prosecution claim. The Court, then, will note that it has not been called upon to make any determination regarding the sufficiency of the evidence relating to this claim. Regarding probable cause, the Court finds only that there are sufficient facts upon which a jury could determine that Mr. Sears lacked probable cause to believe that Stacie had committed theft.

Defendant further seems to argue that the Plaintiffs have not presented sufficient evidence to support the fourth element of this tort: that the Defendant "acted with malice or for the primary purpose other than bringing the plaintiff to justice." *Taha*, 836 A.2d at 637. Defendant further argues that Plaintiffs have not presented sufficient evidence to support an award of punitive damages. Though the title ascribed to the tort in question clearly suggests it, under Maryland law, a plaintiff need not demonstrate "malice," in the sense of "spite, hatred, personal enmity or a desire for revenge," to succeed on a claim for "malicious prosecution." *See Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 205 n.7 (Md. 1985). Rather, a plaintiff need only present evidence from which a reasonable juror could find that the defendant acted with a "primary purpose other than bringing the plaintiff to justice." *Taha*, 836 A.2d at 637. This element, then, can be "inferred from a lack of probable cause." *Montgomery Ward v. Wilson*, 664 A.2d 916, 924 (Md. 1995). However, "for punitive damages . . . a plaintiff must establish by clear and convincing evidence the defendant's wrongful or improper motive for instigating the prosecution." *Id.* at 933. That is, "malice" inferred from a lack of probable cause is sufficient for liability and compensatory damages, but "malice" must be proven by more than this inference for a plaintiff to receive an award of punitive damages.

The Maryland Court of Appeals has explained what "malice," in the sense of ill-will, may consist of.

> [T]he term 'malice,' in this form of action, is not to be considered in the sense of spite or hatred against an individual, but of *malus animus,* and as denoting that the party is actuated by improper and indirect motives. **If**, **for example, a prosecution is initiated upon weak and unsubstantial ground for purposes of annoyance, or of frightening and coercing the party prosecuted into the settlement of a demand, the surrender of goods**, **or for the accomplishment of any other object, aside from the apparent object of the prosecution and the vindication of public justice**, the party who puts the criminal law in motion under such circumstances lays himself open to the charge of being actuated by malice. Such motives are indirect and improper, and for the gratification of which the criminal law should not be made the instrument."

*Wilson*, 664 A.2d at 924-25 (emphasis added) (quoting *Johns v. Marsh*, 52 Md. 323, 332-33 (1879) (internal quotation marks omitted)).

If the jury believes Stacie and Andrew's version of events, there is evidence from which a jury could find that Mr. Sears was motivated by something besides a desire to bring Stacie to justice, and that his improper motivation extended beyond a mere failure to develop (and retain) probable cause. Stacie swears that Mr. Sears "threatened to arrest my husband out of spite." (Stacie MacDonald Aff. ¶ 14.) Andrew swears that taking a photograph of Mr. Sears "triggered an aggressive response from [him]." (Andrew MacDonald Aff. ¶ 12.) Stacie testified in her deposition that Mr. Sears "was acting like a lunatic." (Dep. Stacie MacDonald at 92:8-9). She testified at trial that he "was very angry. I don't know why he was so angry." (Trial Tr. 98:7-8.) She also testified at trial that at the time she told her husband Mr. Sears "seemed crazy," and was "all fired up" and "was out of control." (*Id.* at 101:15-18; *see also id.* at 110:13-111:1 ("Mr. Sears was acting crazy . . . . I just felt like this was a man out of control.") Andrew testified at trial that after he took Mr. Sears' picture, Mr. Sears "was very irate, raised his voice, [and] screamed." (*Id.* at 136:1-2.)

14

The jury could determine that in addition to making an unreasonable mistake about whether Stacie had stolen the Veggie Cakes, Mr. Sears acted with some purpose other than that of bringing Stacie to justice; perhaps for the "purpose[] of annoyance, or of frightening and coercing the party prosecuted into the settlement of a demand, [or] the surrender of goods." *Wilson*, 664 A.2d at 924-25 (emphasis added) (quoting *Johns v. Marsh*, 52 Md. 323, 332-33 (1879) (internal quotation marks omitted)). Importantly, if jurors believed the MacDonalds, they could make that second determination based on more than an inference arising from the first. Therefore, the Court finds that there is sufficient evidence upon which a jury could award punitive damages in Stacie's malicious prosecution claim.

### c. *Assault and Battery*

In Maryland,

> the tort of assault consists of two basic elements: (1) the plaintiff must allege that he or she was threatened by the defendant, who possessed the apparent present ability to carry out that threat, which element is measured by a standard of reasonableness; and (2) the defendant's actions must have raised in the plaintiff's mind an apprehension of imminent bodily harm, which element is measured by a subjective standard . . . .

*Griffin v. Clark*, RWT-11-2461, 2012 WL 4341677, at *4 (D. Md. Sept. 20, 2012). A battery under Maryland law consists of "the unpermitted application of trauma by one person upon any part of the body of another person." *Johnson v. Valu Food, Inc.*, 751 A.2d 19, 21 (Md. Ct. Spec. App. 2000).

Plaintiffs do not allege that any of Defendant's agents threatened Stacie or touched her.[3] Plaintiffs do not need to allege, specifically, that Defendant's agent "threatened" Stacie in order

---

[3] In their opposition to Defendant's motion, Plaintiffs state that Mr. Sears grabbed Stacie's arm and Stacie's shopping cart, and prevented Stacie from leaving the office. (Opp'n at 25.) They further state that this is "unrebutted evidence of both an assault and a battery." (*Id.*) It does not appear to be unrebutted or evidence of assault. More importantly, it is not evidence that goes to the assault and battery claim that Plaintiffs brought in their complaint. To reiterate, Plaintiffs do not allege in their complaint that Mr. Sears touched Stacie, or threatened to

15

to state a claim for assault, nor do they have to prove that Defendant's agent made an explicit threat in order to be successful on that claim. *See Griffin*, 2012 WL 4341677, at *4. But they need to at least allege and prove that Defendant's agent engaged in some threatening behavior. *See id.* Plaintiffs do not allege any of Defendant's agents explicitly threatened Stacie, or engaged in any threatening behavior. (*See* Compl. ¶¶ 8-17.) To be clear, "threatening" in this context refers to a threat of physical harm, or at least physical contact. Plaintiffs allege that Mr. Sears "accosted, stopped, and falsely arrested" Stacie, but they do not allege that because of this behavior Stacie was put in apprehension of an imminent battery. (*See id.* ¶ 9.) Rather, Plaintiffs allege that "Defendant's agent's actions caused Plaintiff Stacie MacDonald to be put in reasonable apprehension and fear of an imminent battery *as described herein in this complaint*." (*Id.* ¶ 34.) According to Plaintiffs' complaint the only time Stacie was physically touched was when she was "handcuffed and shackled" by the police. (*Id.* ¶ 15.) Perhaps, then, Plaintiffs' theory was that contacting the police was threatening, but a threat of such future touchings would not be sufficient to support a claim for assault. *See* Restatement (Second) of Torts § 29 (1965).

Plaintiffs similarly do not allege that Mr. Sears, or any other of Defendant's agents, touched Stacie. They argue in opposition that Defendant is liable for the actions of the police under the doctrine of "transferred intent." (Opp'n at 26.) It is unclear what the Plaintiffs' argument for "transferred intent" is, but regardless the transferred intent doctrine is inapplicable to this case. Under that doctrine, "applied primarily in the criminal law arena," when person A intends to cause harm to person B but in doing so harms person C, person A's intent to harm person B can be "transferred" to his conduct towards person C. *See Hendrix v. Burns*, 43 A.3d 415, 428-29 (Md. Ct. Spec. App. 2012). There is no evidence presented that Mr. Sears, or any

---

physically harm Stacie in any way. Plaintiffs cannot amend their complaint through opposition briefs. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997).

16

other of Defendant's employees, intended to harm someone other than Stacie but in acting upon that intent ended up harming her. Plaintiffs did not allege that Defendant or Defendant's agents themselves threatened or touched Stacie, and have not presented sufficient evidence from which a jury could find that the Defendant is nevertheless liable to her for an assault or battery on some other ground. Accordingly, summary judgment will be granted for the Defendant on Stacie's assault and battery claims.

### d. *Negligence*

In Count V, Stacie brings a count of negligence, alleging that Defendant "breached its duty to Plaintiff when Defendant's agent falsely accused and arrested Plaintiff Stacie MacDonald," and that "Defendant's actions in causing Plaintiff's arrest were negligent, careless, and reckless in the following respects: (a) inadequate training of its employees; (b) poor supervision of its employees; (c) hiring of unqualified individuals; (d) failing to review and provide security camera footage which would have exonerated the Plaintiff; and (e) was otherwise negligent, careless, and reckless in respects not presently known to or ascertainable by Plaintiff." (Compl. ¶¶ 41-42.)

Defendant makes two arguments as to why it is entitled to judgment on Stacie's negligence claim. First, Plaintiff alleges that Mr. Sears acted intentionally, and thus his conduct cannot serve as the basis for a negligence claim. Second, to the extent Stacie's claim is one of negligent hiring, retention, or supervision, she has presented no evidence to support that claim. The Court agrees with Defendant on both arguments.[4] The Plaintiffs perhaps agree with the Defendant as well, as they do not contest either argument in their opposition, or make any

---

[4] The Court will additionally, and briefly, note that, insofar as Plaintiff's claim is based on Defendant's "failure to review and provide security camera footage which would have exonerated the Plaintiff," there is no evidence presented that supports this claim (besides, it is unclear what duty this alleged conduct breaches). The Court remembers the discovery dispute related to this issue, but Plaintiffs have presented no evidence or argument regarding it in the litigation of this motion.

17

arguments of their own in support of their negligence claim. "As a general proposition, if the tortious act is intentional, it may be willful, wanton, or fraudulent, but not negligent." *Wasler v. Resthaven Mem. Gardens, Inc.*, 633 A.2d 466, 476 (Md. Ct. Spec. App. 1993) (internal quotation marks and alterations omitted). Furthermore, there does not appear to be any evidence presented as to Defendant's hiring policy, Mr. Sears' credentials, whether or not Mr. Sears had been properly trained, whether or not he was properly supervised or so forth. Thus, judgment will be granted for the Defendant on Stacie's negligence claim.

    **e.** *Loss of Consortium*

The parties do not spill much ink litigating the loss of consortium claim, and neither will the Court. "A claim for loss of consortium arises from the loss of society, affection, assistance, and conjugal fellowship suffered by the marital unit as a result of the physical injury to one spouse through the tortious conduct of a third party." *Oaks v. Connors*, 660 A.2d 423, 428 (Md. 1995). It is derivative of the injured spouse's claim. *Id.* at 430. Defendant argues that Stacie's independent claims fail as a matter of law, and thus Andrew has no derivative claim. It also argues that Andrew has not presented evidence of damages. As discussed above, Stacie's false imprisonment and malicious prosecution claims do not fail as a matter of law, and Andrew has stated that he suffered harm as a result of this incident. (*See* Dep. Andrew MacDonald at 11:17-12:1.) Accordingly, Andrew's loss of consortium claim will proceed.

**IV.** *Conclusion*

There are sufficient facts in dispute from which a reasonable jury *could* conclude that Defendant's employee did not have probable cause to suspect Stacie of theft (or, that he *did*, but then it was "destroyed" by his subsequent failures), and therefore Defendant's motion for summary judgment will be denied in part and judgement will not be granted for Defendant on

18

Plaintiff's malicious prosecution, false imprisonment, or loss of consortium claims. Plaintiffs have not, however, presented sufficient evidence to support assault, battery, or negligence claims – upon this record there are no genuine issues of material fact that warrant trial on those claims. Accordingly, Defendant's motion for summary judgment will be granted in part and judgment will be granted to the Defendant on Plaintiffs' assault, battery, and negligence claims.

DATED this 23rd day of March, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge